1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELYNDA G.,[1] <br><br>                     Plaintiff, <br><br>       v. <br><br> KILOLO KIJAKAZI, Acting <br> Commissioner of Social Security <br> Administration, <br><br>               Defendant. | Case No. 5:20-cv-00890-JC <br><br> MEMORANDUM OPINION <br><br> [DOCKET NOS. 14, 15] |

18
**I.   SUMMARY**

19
     On April 27, 2020, plaintiff filed a Complaint seeking review of the
20
Commissioner of Social Security's denial of her application for benefits.  The
21
parties have consented to proceed before the undersigned United States Magistrate
22
Judge.

23
     This matter is before the Court on the parties' cross-motions for summary
24
judgment (respectively, "Plaintiff's Motion" and "Defendant's Motion").  The

25
26

27
    [1]Plaintiff's name is partially redacted to protect her privacy in compliance with Federal
Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
28
Administration and Case Management of the Judicial Conference of the United States.

1   Court has taken the parties' arguments under submission without oral argument.

2   See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 3.

3        Based on the record as a whole and the applicable law, the decision of the

4   Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

5   ("ALJ") are supported by substantial evidence and are free from material error.

6   **II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

7          **DECISION**

8        On January 8, 2017, plaintiff protectively filed an application for Disability

9   Insurance Benefits, alleging disability beginning on January 28, 2016, due to

10   multiple sclerosis (or "MS"), broken left hip, and osteoporosis.  (See

11   Administrative Record ("AR") 21, 186-87, 221).  An ALJ subsequently examined

12   the medical record and, on May 16, 2019, heard testimony from plaintiff (who was

13   represented by counsel), as well as plaintiff's husband and a vocational expert.

14   (AR 34-85).  On June 5, 2019, the ALJ determined that plaintiff was not disabled

15   between the alleged onset date of January 8, 2016, and the date last insured, June

16   30, 2016.  (AR 21-29).  Specifically, the ALJ found:  (1) plaintiff's multiple

17   sclerosis qualified as a severe impairment (AR 23); (2) plaintiff's impairments,

18   considered individually or in combination, did not meet or medically equal a listed

19   impairment (AR 24); (3) plaintiff retained the residual functional capacity (or

20   "RFC")[2] to perform a reduced range of light work (20 C.F.R. § 404.1567(b))[3] (AR

21

22

23        [2]Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

24

25        [3]The ALJ found that plaintiff (i) could lift and/or carry twenty pounds occasionally and ten pounds frequently; (ii) could sit for six hours out of an eight-hour workday; (iii) could stand

26   or walk for two hours out of an eight-hour workday; (iv) could not climb ladders, ropes or scaffolds; (v) could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl;

27   (vi) could occasionally reach overhead with the non-dominant left upper extremity; and (vii) needed to avoid concentrated exposure to extreme cold and heat, vibration, and hazards.

28   (AR 24).

1  24); (4) plaintiff was capable of performing her past relevant work as an

2  accounting clerk (AR 28); and (5) plaintiff's statements regarding the intensity,

3  persistence, and limiting effects of subjective symptoms were inconsistent with the

4  medical evidence and other evidence in the record (AR 25).

5  　　On April 6, 2020, the Appeals Council denied plaintiff's application for

6  review of the ALJ's decision.  (AR 1-3).

7  **III.   APPLICABLE LEGAL STANDARDS**

8  　　**A.   Administrative Evaluation of Disability Claims**

9  　　To qualify for disability benefits, a claimant must show that she is unable

10  "to engage in any substantial gainful activity by reason of any medically

11  determinable physical or mental impairment which can be expected to result in

12  death or which has lasted or can be expected to last for a continuous period of not

13  less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

14  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded

15  by regulation on other grounds; 20 C.F.R. § 404.1505(a).  To be considered

16  disabled, a claimant must have an impairment of such severity that she is

17  incapable of performing work the claimant previously performed ("past relevant

18  work") as well as any other "work which exists in the national economy." Tackett

19  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

20  　　To assess whether a claimant is disabled, an ALJ is required to use the five-

21  step sequential evaluation process set forth in Social Security regulations. See

22  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)

23  (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520,

24  416.920).  The claimant has the burden of proof at steps one through four – i.e.,

25  determination of whether the claimant was engaging in substantial gainful activity

26  (step 1), has a sufficiently severe impairment (step 2), has an impairment or

27  combination of impairments that meets or medically equals one of the conditions

28  listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and

1  retains the residual functional capacity to perform past relevant work (step 4).

2  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The

3  Commissioner has the burden of proof at step five – *i.e.*, establishing that the

4  claimant could perform other work in the national economy.  Id.

5  **B.    Federal Court Review of Social Security Disability Decisions**

6          A federal court may set aside a denial of benefits only when the

7  Commissioner's "final decision" was "based on legal error or not supported by

8  substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871

9  F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The

10 standard of review in disability cases is "highly deferential."  Rounds v. Comm'r

11 of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation

12 marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could

13 reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at

14 674-75 (citations omitted).  Even when an ALJ's decision contains error, it must

15 be affirmed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec.

16 Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if

17 (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path

18 may reasonably be discerned despite the error) (citation and quotation marks

19 omitted).

20         Substantial evidence is "such relevant evidence as a reasonable mind might

21 accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining

22 "substantial evidence" as "more than a mere scintilla, but less than a

23 preponderance") (citation and quotation marks omitted).  When determining

24 whether substantial evidence supports an ALJ's finding, a court "must consider the

25 entire record as a whole, weighing both the evidence that supports and the

26 evidence that detracts from the Commissioner's conclusion[.]"  Garrison v.

27 Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

28 ///

4

1    Federal courts review only the reasoning the ALJ provided, and may not

2    affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."

3    Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need

4    not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's

5    reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin,

6    806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

7        A reviewing court may not conclude that an error was harmless based on

8    independent findings gleaned from the administrative record.  Brown-Hunter, 806

9    F.3d at 492 (citations omitted).  When a reviewing court cannot confidently

10   conclude that an error was harmless, a remand for additional investigation or

11   explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173

12   (9th Cir. 2015) (citations omitted).

13   **IV.   DISCUSSION**

14       Plaintiff claims that remand is warranted because (1) the ALJ improperly

15   considered plaintiff's past relevant work; (2) the ALJ improperly rejected the

16   medical opinion of treating neurologist Dr. Jeffrey Ries, D.O.; (3) the ALJ failed

17   to give legally sufficient reasons to reject the testimony of plaintiff and her

18   husband; (4) the ALJ improperly determined that plaintiff's condition worsened

19   after her date last injured; and (5) the medical opinion of Dr. Pamela J. Harford

20   submitted to the Appeals Council demonstrates a reasonable possibility of

21   changing the outcome.[4]  (See Plaintiff's Motion at 1-16).  For the reasons stated

22   below, the Court concludes that a reversal or remand is not warranted.

23   ///

24   _____

25       [4]This Court reviews Dr. Harford's opinion as part of the administrative record on review
     because the Appeals Council considered it in deciding whether to review the ALJ's decision.
26   See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the
     Appeals Council considers new evidence in deciding whether to review a decision of the ALJ,
27   that evidence becomes part of the administrative record, which the district court must consider
     when reviewing the Commissioner's final decision for substantial evidence.").
28

1

2

### A.     The ALJ Properly Found That Plaintiff Can Perform Past Relevant Work

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past relevant work. 20 C.F.R. § 404.1520(f).  Past relevant work is work that a claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b).  "Substantial gainful activity" is defined as work activity that (1) involves doing significant physical or mental activities (*i.e.*, "substantial") and (2) is usually done for pay or profit, whether or not a profit is realized (i.e., "gainful").  20 C.F.R. § 404.1572(a)-(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations,[5] it is presumed that she has demonstrated the ability to engage in substantial gainful activity. 20 C.F.R. § 404.1574.  The regulations provide that a claimant's past relevant work will be considered substantial gainful activity when her earnings exceed those listed in the guidelines.  Id.  Evidence of low earnings, on the other hand, creates a presumption that the claimant has not engaged in substantial gainful activity.  Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001).  This presumption "shifts the step-four burden of proof from the claimant to the Commissioner."[6]  Id.

///

21

22

23

24

25

26

27

28

[5]The current guidelines can be found at https://www.ssa.gov/oact/cola/sga.html.  The applicable regulation, 20 C.F.R. § 404.1574, sets out substantial gainful activity law and guidelines.

[6]When this latter presumption applies, the ALJ must "point[] to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful activity."  Lewis, 236 F.3d at 515.  Factors that may demonstrate substantial gainful activity despite low earnings include "the nature of the claimant's work, how well the claimant does the work, if the work is done under special conditions, if the claimant is self-employed, and the amount of time the claimant spends at work."  Id. at 515-16 (citing 20 C.F.R. §§ 404.1573, 416.973).

1      Here, the ALJ ended the sequential inquiry at step four by finding that

2  plaintiff was not disabled because she could engage in her past relevant work as an

3  accounting clerk.  (AR 28-29).  The ALJ expressly found, "[b]ased on the

4  evidence of record," that plaintiff's accounting clerk position qualified as past

5  relevant work "because [plaintiff] performed it within 15 years of the date of th[e]

6  decision, for a sufficient length of time to learn and provide average performance,

7  and at the level of substantial gainful activity."  (AR 28).

8      As plaintiff points out, fifteen years prior to the date of the ALJ's decision

9  was June 5, 2004, and plaintiff's highest earnings during that period was in 2007,

10  when she worked as a data entry clerk at M&M Printed Bag, Inc., and earned a

11  total of $10,618, at an average of $884.83 per month.  (AR 207; see AR 74, 195,

12  239, 277).  In that year, according to the applicable guidelines, the minimum

13  earnings for substantial gainful activity was $900 per month.  Plaintiff, therefore,

14  did not meet the minimum earnings within fifteen years of the date of the decision.

15      However, it is clear from the record that the ALJ's finding at step four was

16  based on plaintiff's work as an accounting clerk, which she performed *within*

17  *fifteen years of her date last insured – i.e.*, the period from June 30, 2001 to June

18  30, 2016 – which was the relevant period for plaintiff's disability insurance

19  benefits application, under title II of the Social Security Act, notwithstanding the

20  ALJ's erroneous reference to "the date of th[e] decision."  (See AR 28 & n.3, 72-

21  74, 239, 243); SSR 82-62, 1982 WL 31386 ("In those title II cases in which the

22  claimant's disability insured status was last met prior to adjudication, the work

23  performed *for the 15-year period preceding the date the title II disability insured*

24  *status requirement was last met* would generally be considered relevant, since the

25  claimant's capacity for SGA as of that date represents a critical disability issue.")

26  (emphasis added).  Plaintiff worked as an accounting clerk at Chino Valley

27  Medical Center (also referred to as "Veritas Health Services" or "CHC Payroll

28  Agent"), from 1993 to 2002.  (See AR 72-74, 239, 243).  In 2002 – within the

1  relevant fifteen-year period – plaintiff earned $12,547.92, or an average of

2  $1,045.66 per month (AR 194, 202), which is above the threshold earnings in the

3  guidelines for that year ($780 per month).

4  Accordingly, the ALJ properly concluded that plaintiff's accounting clerk

5  position qualified as past relevant work because she performed it within fifteen

6  years *of her date last insured*, "for a sufficient length of time to learn and provide

7  average performance, and at the level of substantial gainful activity." (AR 28).

8  Any misstatement by the ALJ on this issue is therefore harmless. See Treichler,

9  775 F.3d at 1099.

10  **B.    The ALJ Did Not Err in Considering Dr. Ries's Medical Opinion**

11  **1.    Pertinent Law**

12  In Social Security cases, the amount of weight given to medical opinions

13  generally varies depending on the type of medical professional who provided the

14  opinions, namely "treating physicians," "examining physicians," and

15  "nonexamining physicians."[7]  20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502,

16  404.1513(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted).

17  A treating physician's opinion is generally given the most weight, and may be

18  "controlling" if it is "well-supported by medically acceptable clinical and

19  laboratory diagnostic techniques and is not inconsistent with the other substantial

20  evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2); Revels

21  v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted).  In turn, an

22  examining, but non-treating physician's opinion is generally entitled to less weight

23

24  _____

[7]Since plaintiff filed her application before March 27, 2017, 20 C.F.R. § 404.1527

25  applies.  For an application filed on or after March 27, 2017, 20 C.F.R. § 404.1520c would apply.

26  20 C.F.R. § 404.1520c changed how the Social Security Administration considers medical

opinions and prior administrative medical findings, eliminated the use of the term "treating

27  source," and eliminated deference to treating source medical opinions.  See 20 C.F.R.

§ 404.1520c(a); Danny L.R. v. Saul, 2020 WL 264583, at *3 n. 5 (C.D. Cal. Jan. 17, 2020); see

28  also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

1   than a treating physician's, but more weight than a nonexamining physician's
2   opinion.  Garrison, 759 F.3d at 1012 (citation omitted).

3   An ALJ may provide "substantial evidence" for rejecting a medical opinion
4   by "setting out a detailed and thorough summary of the facts and conflicting
5   clinical evidence, stating his interpretation thereof, and making findings."
6   Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.
7   1998)) (quotation marks omitted).  An ALJ must provide more than mere
8   "conclusions" or "broad and vague" reasons for rejecting a treating or examining
9   doctor's opinion.  See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989)
10  (citation omitted).  "[The ALJ] must set forth his own interpretations and explain
11  why they, rather than the [doctor's], are correct."  Embrey v. Bowen, 849 F.2d
12  418, 421-22 (9th Cir. 1988).

### 2.    Analysis

14  Plaintiff contends that the ALJ improperly considered the opinion of Dr.
15  Ries, who treated plaintiff at various intervals from 1996 to 2018.  (Plaintiff's
16  Motion at 3-6; see AR 514).  Dr. Ries provided an assessment of plaintiff's
17  limitations dated July 27, 2018.  (AR 514-16).  At that time, Dr. Ries's last
18  examination of plaintiff had occurred on March 5, 2018.  (AR 514; see AR 524-
19  27).  In his assessment, Dr. Ries diagnosed Plaintiff with multiple sclerosis,
20  nicotine dependency, back pain, and gait disturbance, and he noted that she suffers
21  from fatigue.  (AR 514).  He opined that plaintiff required unscheduled breaks to
22  rest; could not sit or stand for six hours in an eight-hour period; could not lift
23  frequently; could not use the hands or arms for grasping, pulling, pushing or fine
24  manipulation for eight hours on a sustained basis; could not use her legs to pull or
25  push frequently for eight hours on a sustained basis; required ready access to a
26  restroom; and would be absent from work about twice a month.  (AR 515-16).

27  The ALJ gave little weight to Dr. Ries's opinion because it was "dated more
28  than two years after [plaintiff's] date last insured," and plaintiff's treatment

1   records from around the date last insured did "not support such extreme functional

2   limitations." (AR 28).

3        Plaintiff contends that the lateness of the opinion was not a valid basis to

4   reject it. (Plaintiff's Motion at 3-4). However, opinions provided after the date

5   last insured may indeed be given less weight on this basis, particularly where such

6   opinions do not appear to concern the earlier period at issue. See Watkins v.

7   Astrue, 357 Fed. App'x 784, 786 (9th Cir. 2009) (affirming rejection of treating

8   physician's opinion offered after claimant's insured status expired where the

9   "questionnaire [was] written in the present tense" and "made no indication" it was

10  retroactive); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996) ("The opinion of a

11  psychiatrist who examines the claimant after the expiration of his disability

12  insured status, however, is entitled to less weight than the opinion of a psychiatrist

13  who completed a contemporaneous exam."). That is true here. There is nothing in

14  Dr. Ries's opinion to suggest that it referred to the relevant period in 2016.

15  Moreover, the ALJ reasonably found that the medical evidence from around the

16  date last insured did not support the assessed limitations. (AR 28). As an

17  example, the ALJ pointed to Dr. Ries's physical examinations in August 2016

18  which revealed reduced sensation in the feet and otherwise normal findings. (AR

19  28; see AR 402). At that time, Dr. Ries observed that plaintiff had a normal gait

20  and was able to stand without difficulty. (AR 26, 402). The ALJ also noted that

21  an October 2016 MRI of the brain revealed a clinical history of multiple sclerosis

22  with no abnormal enhancement or acute abnormality noted. (AR 25; see AR 366).

23       In addition, as the ALJ found, ample evidence in the record suggests that

24  plaintiff's condition was stable until after the date last insured, when it began to

25  worsen significantly. (AR 26, 27). This includes plaintiff's own reports to

26  treating providers that she "was stable for years" until October 2016 (AR 438),

27  which is also when she began using a cane (AR 436, 557). When Dr. Ries later

28  examined plaintiff on March 5, 2018, he noted that plaintiff arrived in a

1    wheelchair, which was "the first time this has occurred." (AR 524). Given this

2    evidence of significant worsening after the relevant period, it was especially

3    reasonable for the ALJ to reject opinions that appeared to be based on plaintiff's

4    later, worsened condition.

5         Plaintiff argues that if the ALJ doubted whether Dr. Ries's opinion referred

6    to the period at issue rather than when it was dated, the ALJ should have

7    developed the record by contacting Dr. Ries. (Plaintiff's Motion at 4). However,

8    the record was sufficiently clear and developed for the ALJ to reasonably conclude

9    that Dr. Ries's opinion did not describe plaintiff's limitations during the relevant

10   period at issue. See Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir.

11   2008) ("The ALJ is the final arbiter with respect to resolving ambiguities in the

12   medical evidence"); see also Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir.

13   2017) ("Where evidence is susceptible to more than one rational interpretation, it

14   is the ALJ's conclusion that must be upheld."). In these circumstances, the ALJ

15   was not obligated to develop the record further. See Mayes v. Massanari, 276

16   F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is

17   triggered only when there is ambiguous evidence or when the record is inadequate

18   to allow for proper evaluation of the evidence.").

19        Plaintiff also contends that the ALJ erred by rejecting Dr. Ries's opinion as

20   "extreme." (Plaintiff's Motion at 4). Plaintiff submits that the ALJ could not

21   properly characterize the opinion as "extreme" when, in some respects, it did not

22   significantly differ from the ALJ's own RFC assessment. (Plaintiff's Motion at 4;

23   see AR 24, 515-16). However, even if the ALJ may have misused the term

24   "extreme" in this context, substantial evidence nonetheless supports the ALJ's

25   finding that the limitations assessed by Dr. Ries overall are at least more severe

26   than those supported by the evidence in the record.

27        Finally, plaintiff argues that the ALJ's rejection of Dr. Ries's opinion was

28   inappropriate because "there is no reliable opinion to the contrary sufficient to

11

refute" the opinion.  (Plaintiff's Motion at 5).  That is incorrect.  While the ALJ gave little weight to Dr. Ries's opinion, as well as the other opinions by treating doctors – specifically, Dr. Allen Nielsen, M.D., and Dr. Randolph Kado, Ph.D.[8] – the ALJ gave some weight to the opinions of the state agency non-examining medical consultants, who indicated plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; could sit, stand, or walk for six hours; and could occasionally reach overhead bilaterally, among other limitations.  (AR 27, 93-95, 104-06).  Although non-examining physicians' opinions alone do not constitute substantial evidence, they may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citations omitted).  Here, the ALJ reasonably determined that the state agency assessments were entitled to some weight because they were partly consistent with the medical evidence in the record.  To the extent that the ALJ rejected portions of these opinions, substantial evidence supports these departures.  For example, unlike the state agency physicians, the ALJ limited plaintiff to only occasional overhead reaching with the *left* upper extremity but found no limitation on the right because plaintiff's upper extremity fractures had no more than a minimal effect on her

---

[8]Dr. Nielsen submitted a letter on August 15, 2017, stating that plaintiff could not drive or work on a computer due to visual impairments and could not leave her home due to fatigue.  (AR 511).  Dr. Kado, in a mental assessment dated January 3, 2019, opined that plaintiff was moderately limited in understanding and carrying short and simple instructions; markedly limited in remembering and carrying out detailed instructions; and markedly limited in maintaining concentration, sustaining an ordinary routine without special supervision, performing activities within a schedule, and maintaining regular attendance, among other limitations.  (AR 518-22).  The ALJ gave little weight to these opinions because, as with Dr. Ries's opinion, they were dated more than two years after the date last insured.  (AR 28).  Moreover, the ALJ found that plaintiff's treatment records from around the date last insured did not support the extent of the limitations assessed by Dr. Nielsen, and Dr. Kado did not appear familiar with plaintiff's condition prior to the date last insured, when plaintiff had not received any mental health treatment.  (AR 28).  Plaintiff does not specifically challenge the ALJ's assessment of these opinions.

ability to work and were generally resolved in less than twelve months.  (AR 23, 27).  The ALJ also found that a greater standing and walking limitation was warranted due to plaintiff's "subjective complaints of balance issues and the objective findings of reduced sensation in the bilateral feet."  (AR 27; see AR 400-02).

Accordingly, the ALJ's assessment of Dr. Ries's opinion was supported by legally sufficient reasons and substantial evidence in the record.[9]

### C.   The ALJ Did Not Err in Discounting Plaintiff's Statements and the Third Party Testimony

#### 1.   Pertinent Law

##### a.   ALJ Assessment of Claimant Statements

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process.  20 C.F.R. §§ 404.1529(a), (d).   Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her subjective symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities.  20 C.F.R.

─────────────────

[9]In reaching the conclusion, the Court has also considered the assessment of Dr. Harford, dated July 29, 2019, that was not before the ALJ but was submitted to the Appeals Council.  (See AR 7-10).  Although Dr. Harford's opinion, unlike that of Dr. Ries, does purport to apply to the period beginning on January 15, 2016 (see AR 7), it does not warrant a different conclusion here because, similar to Dr. Ries's opinion, it is not supported by the medical evidence from around the relevant period, as discussed further below.

§§ 404.1529(a), (c)(4); SSR 16-3p, 2017 WL 5180304, at *4-10.[10]  When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities.  See SSR 16-3p, 2017 WL 5180304, at *8.  In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so."  Brown-Hunter, 806 F.3d at 488-89. This requirement is very difficult to satisfy.  See Trevizo, 871 F.3d at 678 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and quotation marks omitted).

An ALJ's decision "must contain specific reasons" supported by substantial evidence in the record for giving less weight to a claimant's statements.  SSR 16-3p, 2017 WL 5180304, at *10.  An ALJ must clearly identify each subjective statement being rejected and the particular evidence in the record which purportedly undermines the statement.  Treichler, 775 F.3d at 1103 (citation omitted).  Unless there is affirmative evidence of malingering, the Commissioner's reasons for rejecting a claimant's testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotation marks omitted), as amended (Apr. 9, 1996). "General findings are insufficient[.]" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it.  See

---

[10]Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation."  See SSR 16-3p, 2017 WL 5180304, at *1-2, *10-11.

1   <u>Thomas</u>, 278 F.3d at 959 (9th Cir. 2002) (citation omitted).  When an ALJ fails
2   properly to discuss a claimant's subjective complaints, however, the error may not
3   be considered harmless "unless [the Court] can confidently conclude that no
4   reasonable ALJ, when fully crediting the testimony, could have reached a different
5   disability determination."  <u>Stout</u>, 454 F.3d at 1056; <u>see also</u> <u>Brown-Hunter</u>, 806
6   F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting claimant
7   testimony "will usually not be harmless").

8                          **b.    ALJ Assessment of Lay Witness Statements**

9           In assessing disability, an ALJ must account for testimony and written
10   statements from lay witnesses concerning a claimant's symptoms or how an
11   impairment affects the claimant's ability to work (collectively "lay evidence").
12   <u>Stout</u>, 454 F.3d at 1053 (citing, in part, <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th
13   Cir. 1993)); <u>see also</u> 20 C.F.R. §§ 404.1513(d)(4) & (e).  Such competent lay
14   evidence "*cannot* be disregarded without comment."  <u>Tobeler v. Colvin</u>, 749 F.3d
15   830, 834 (9th Cir. 2014) (citing, in part, <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467
16   (9th Cir. 1996)) (quotation marks omitted; emphasis in original).  To reject such
17   lay witness evidence, an ALJ must provide "germane reasons" for doing so.
18   <u>Tobeler</u>, 749 F,3d at 833; <u>see also</u> <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir.
19   2009) ("[T]he reasons 'germane to each witness' must be specific.") (citation
20   omitted); <u>Stout</u>, 454 F.3d at 1054 ("[T]he ALJ, not the district court, is required to
21   provide specific reasons for rejecting lay testimony") (citation omitted).

22                          **2.    Relevant Statements**

23                          **a.    Plaintiff**

24          At the hearing on May 16, 2019, plaintiff testified to the following:

25          During the period at issue, between January and June 2016, plaintiff could
26   not work because of her fatigue, which would come and go and was not consistent.
27   (AR 46-47).  She spent a significant part of her day resting.  (AR 57).  Getting a
28   good night's sleep did not help.  (AR 58).

                                          15

1      Plaintiff could walk during that time, but she was losing her footing and

2  falling, due to a loss of muscle control,  and she soon began to use an assistive

3  device (first a cane, followed by a walker).  (AR 47-48).  Her problems worsened

4  over time.  (AR 48).

5      She lived with her husband, who was at work during the day, but plaintiff's

6  mother lived two doors over if she needed something.  (AR 50).  During a typical

7  day, she did not do much because she was recuperating from her falls (which

8  occurred in December 2015 and January 2016, causing injuries to her right hand

9  and shoulder and a fractured left humerus that underwent surgery in January

10  2016).  (AR 50; see AR 41, 305-18).  She did not do chores or cooking.  (AR 51).

11  She had issues with using her hands and reaching because she was in a cast and

12  using a sling.  (AR 52-53).  Her right shoulder and hand healed in about six weeks.

13  (AR 53).  The cast on her left arm was removed about eight weeks after the

14  surgery, but she continued to have pain and difficulty reaching overhead on her

15  left.  (AR 53-55).  Plaintiff also began having vision problems, such as double

16  vision, in early 2016 (AR 59), and she has not driven since 2016 (AR 50).

17      She has had good days and bad days depending on her level of fatigue, and

18  at her prior job she would call in sick often.  (AR 61, 63).

19            **b.**    **Plaintiff's Husband**

20      Plaintiff's husband, David, testified at the hearing to the following:

21      He has been his wife's caregiver as far back as January 2016.  (AR 68).  He

22  worked during that period but was able to leave work to check on her.  (AR 69-

23  70).  In 2016, plaintiff mostly sat on the couch and did not do much.  (AR 69).

24  She spent half the day resting.  (AR 69).  Plaintiff has had difficulties with her left

25  hand since the fall in January 2016.  (AR 68-69).  In addition, plaintiff needs to

26  have ready access to a restroom because of muscle control since 2016, and she has

27  been wearing a diaper for a long time.  (AR 82).

28  ///

1

### 3.    Analysis

2        The ALJ found that plaintiff's medically determinable impairments could

3    reasonably be expected to cause the alleged symptoms, but plaintiff's statements

4    about the intensity, persistence, and limiting effects of the symptoms were not

5    entirely consistent with the medical evidence and other evidence in the record.

6    (AR 25).  The ALJ supported this finding with specific, clear and convincing

7    reasons, based on references to specific evidence in the record, including

8    plaintiff's treatment history, medical evidence, and conflicts with plaintiff's own

9    reports regarding when her condition began to worsen.  (See AR 25-27).  The ALJ

10   also gave specific and germane reasons to discount the third-party statements of

11   plaintiff's husband based on the evidence of plaintiff's minimal treatment for

12   multiple sclerosis during the relevant period and the "relatively mild clinical

13   findings."  (AR 26).

14        First, the ALJ remarked that plaintiff "has not generally received the type of

15   medical treatment one would expect for a totally disabled individual from the

16   alleged onset date through the date last insured."  (AR 25).  The ALJ supported

17   this by noting that plaintiff did not seek any treatment with Dr. Ries between

18   January 2015 and August 2016.  (AR 25; see AR 532).  Plaintiff contends that this

19   is an inappropriate basis for rejecting her statements because the ALJ did not find

20   that more aggressive treatments were available for plaintiff to pursue.  (Plaintiff's

21   Motion at 8-9).  However, the fact that plaintiff had not sought treatment during

22   the relevant period with Dr. Ries, who treated her multiple sclerosis, reasonably

23   supports the ALJ's finding that plaintiff's symptoms from multiple sclerosis had

24   not significantly worsened during or immediately before the relevant period and

25   were not as severe as alleged.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th

26   Cir. 2014) (citation omitted) (in discrediting the claimant's subjective symptom

27   testimony, ALJ may consider "unexplained or inadequately explained failure to

28   seek treatment"); see also Burch, 400 F.3d at 681 ("That [the claimant's] pain was

17

not severe enough to motivate [her] to seek [these forms of] treatment, even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain.") (internal citation omitted).

In addition, the ALJ found that plaintiff's "alleged level of impairment before her date last insured is inconsistent with her statements to doctors . . . that her symptoms were stable until October 2016." (AR 24-25). This is supported by the record. According to a treatment note on February 10, 2017, plaintiff "report[ed] [she] was stable for years . . . until Oct[ober] 2016," and she felt she had been "worsening since Oct[ober] 2016" (AR 438), which is also when plaintiff began using a cane (AR 436, 557). Plaintiff's brain and cervical spine MRI examinations in October 2016 were also "noted to be stable without active lesion and no significant change." (AR 438; see AR 366, 528, 531).

Plaintiff contends that "[t]he fact a condition is stable does not mean that it is not disabling." (Plaintiff's Motion at 10). Yet, the ALJ did not find that plaintiff lacked any functional limitations. Rather, the ALJ reasonably determined that these reports of plaintiff's "stable" condition conflicted with her testimony regarding a worsening of symptoms during the relevant period, and – in conjunction with the medical evidence and other evidence in the record – it supported a finding that plaintiff's limitations were not as severe as alleged during that period.

The ALJ's consideration of the medical evidence in the record further supports this determination. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider . . . ." Burch, 400 F.3d at 681. Here, the ALJ noted, in particular, that an August 2016 physical examination revealed reduced sensation to light touch and pin prick in the feet and otherwise normal findings, and an October 2016 brain MRI revealed a clinical history of multiple sclerosis with no abnormal enhancement or acute abnormality. (AR 25; see AR 366, 400-03).

Furthermore, the ALJ noted that many of the plaintiff's alleged limitations regarding the relevant period were caused by her upper extremity fractures, which the ALJ found had no more than a minimal effect on her ability to work and were resolved in less than twelve months.  (AR 23-24, 26).  Plaintiff has not specifically challenged this finding.  As stated above, plaintiff testified that her right shoulder and hand healed in about six weeks, though she continued to experience pain and difficulty reaching overhead on the left.  (See AR 52-55).  The ALJ thus limited plaintiff to only occasionally reaching overheard with her left extremity.  (AR 24).

Plaintiff asserts that the ALJ erred by failing to discuss her daily activities.  (Plaintiff's Motion at 11).  However, while a claimant's daily activities are considered when assessing a claimant's alleged limitations, the ALJ is not required to specifically discuss the activities when assessing the claimant's statements in the decision.  See Powell v. Massanari, 2001 WL 1563712, at *3 (N.D. Cal. Dec. 3, 2001) (ALJ did not err by neglecting to discuss daily activities in the decision because "although the ALJ was required to consider [plaintiff's] daily activities as part of the credibility analysis, there is no specific requirement that he set forth in the decision his analysis as to each factor identified in SSR 96-7p") (citing SSR 96-7p);[11] see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence.") (internal quotation and citations omitted).  Moreover, the ALJ did acknowledge the relevant testimony on this issue, which was essentially that plaintiff spent most of the day resting and sitting on the couch, and was unable to perform any household chores.  (See AR 25-26, 51, 57, 69).  Notwithstanding this testimony, the ALJ reasonably found plaintiff had greater functional ability during the relevant period than alleged.

_____

[11]Although SSR 96-7p was superseded by SSR 16-3p, the latter similarly provides that a claimant's daily activities will be considered but does not require that they be discussed in the decision.

1   Accordingly, plaintiff has failed to identify any material error in the ALJ's

2   assessment of plaintiff's and her husband's statements regarding the limiting

3   effects of plaintiff's symptoms.  The ALJ provided legally sufficient reasons to

4   discount these statements, and those reasons are supported by substantial evidence

5   in the record.

6   **D.    The ALJ Did Not Err in Finding Worsening After the Date Last**

7        **Insured**

8   As indicated above, the ALJ found that plaintiff's condition worsened in

9   October 2016, after the date last insured.  (AR 27).  This was particularly

10  supported by a February 2017 treatment note indicating that plaintiff's multiple

11  sclerosis was stable until around October 2017, when it started to worsen, and she

12  began using a cane.  (AR 27; see AR 436-38).

13  Plaintiff contends that the ALJ erred on this issue because some of the

14  evidence in the record instead suggests that her worsening symptoms arose earlier

15  and during the relevant period.  (Plaintiff's Motion at 13-14).  Specifically,

16  plaintiff points to the evidence of her falls in late 2015 and early 2016, as well as

17  Dr. Ries's August 2016 examination showing abnormal sensation.  (Plaintiff's

18  Motion at 13-14).  In light of such evidence, plaintiff argues that the record is

19  ambiguous on this issue, and the ALJ failed to develop the record further to

20  appropriately resolve the matter.

21  However, the ALJ's finding on this issue is reasonable and supported by

22  substantial evidence in the record, including the February 2017 treatment note

23  referenced above.  (See AR 438).  Although plaintiff had several falls prior to

24  October 2016, as the ALJ noted, plaintiff's husband had reported that some of

25  these falls "may not have been due to balance problems."[12]  (AR 27, 438).

26

27      [12]The treatment note reports that one of these falls apparently occurred when plaintiff
    "[h]ad a cast on right hand from unrelated accident and fell down stairs when [she] didn't grab
28
    (continued...)

20

Morever, despite these falls, plaintiff did not begin using a cane until several months after the date last insured.  (AR 436, 557).  In addition, while plaintiff demonstrated abnormal sensation in the feet in August 2016, as the ALJ noted, the other examination findings were generally normal (AR 25; see AR 400-03), and her MRIs in October 2016 were "stable without active lesion and no significant change"  (AR 438; see AR 366, 528, 531).

Accordingly, the record provided substantial evidence to support the ALJ's finding that plaintiff's condition worsened after the date last insured and was not disabling prior to that date.  Because the record was sufficiently clear and developed on this issue, the ALJ had no obligation to develop the record further. See Mayes, 276 F.3d at 459-60.

**E.**     **Remand Is Not Warranted Based on New Evidence Submitted to the Appeals Council**

Plaintiff additionally argues that remand is required for the ALJ to consider Dr. Harford's medical source statement, dated July 29, 2019, that plaintiff submitted to the Appeals Council after the ALJ issued her decision.  (Plaintiff's Motion at 14-16; see AR 7-10).

Dr. Harford opined that plaintiff had symptoms from multiple sclerosis and was limited to sitting for one hour at a time for a total of four hours in an eight-hour day, but could not stand or walk for any period.  (AR 7-8).  Dr. Harford further opined that plaintiff could rarely lift less than ten pounds, could never lift more than ten pounds, and would be absent from work about four days per month. (AR 9-10).  Dr. Harford served as plaintiff's physician for many years, in part during the relevant period.  (See AR 224).  Her medical source statement indicates that she had treated plaintiff twice a year on average, including in 2016.  (AR 7),

---

[12](...continued)
railing, but didn't feel unsteady." (AR 436). Then, "[a]bout 1 week later, [she] fell down stairs and broke upper left arm, may have misstepped. Balance was okay."  (AR 436).

1   and that the limitations set forth in her statement have been applicable since

2   January 15, 2016 (AR 10).  The Appeals Council considered this new evidence in

3   denying plaintiff's request for review of the ALJ's decision, and found that it

4   "does not show a reasonable probability that it would change the outcome of the

5   decision."  (AR 2).

6        As indicated above, "when the Appeals Council considers new evidence in

7   deciding whether to review a decision of the ALJ, that evidence becomes part of

8   the administrative record, which the district court must consider when reviewing

9   the Commissioner's final decision for substantial evidence."  Brewes, 682 F.3d at

10  1163.  To justify a remand on this basis, plaintiff must "demonstrate that there is a

11  'reasonable possibility' that the new evidence would have changed the outcome of

12  the administrative hearing."  Mayes, 276 F.3d at 462; see also Mengistu v. Colvin,

13  537 F. App'x 724, 725 (9th Cir. 2013); Hermiz v. Berryhill, 2019 WL 3780271, at

14  *15 (S.D. Cal. Aug. 9, 2019), report and recommendation adopted, 2019 WL

15  4016451 (S.D. Cal. Aug. 26, 2019).

16       Here, plaintiff fails to show a reasonable possibility that Dr. Harford's

17  opinion would have changed the outcome of the decision.  In particular, although

18  Dr. Harford's assessment purports to apply beginning on January 15, 2016 (AR

19  10), which is near the alleged onset date of January 8, 2016, the opinion does not

20  appear to be supported by examinations or other evidence from that period.  For

21  example, the record before the ALJ included two treatment notes from Dr.

22  Harford's office during the relevant period which provide no significant findings,

23  aside from arm pain and related constraint just before and after plaintiff's January

24  2016 surgery on her left arm.[13]  (See AR 328-32).  Another treatment note from

25  ///

26

27       [13]One treatment note, dated January 5, 2016, concerns a pre-operation exam by a certified
28  physician assistant to clear plaintiff for her left humerus surgery.  (AR 330-31).  The other, dated
    February 10, 2016, is to remove plaintiff's sutures from the procedure.  (AR 328-29).

1  September 29, 2016, a few months after the date last insured, is unrelated to the

2  symptoms or impairments at issue here.[14]  (AR 325-26).

3      Dr. Harford's opinion does not undermine the conclusion that the

4  Commissioner's final decision is supported by substantial evidence in the record.

5  Among other evidence, as discussed above, the ALJ's decision is supported by

6  the August 2016 physical examination showing plaintiff had a normal gait, was

7  able to stand without difficulty, and had generally normal findings aside from

8  some reduced sensation in the feet (AR 26, 28; see AR 402); the October 2016

9  MRIs of the brain and cervical spine showing no significant new pathology or

10  acute abnormality (AR 25; see AR 366, 528); plaintiff's failure to seek any

11  treatment from Dr. Ries from January 2015 to August 2016 (AR 25; see AR 532);

12  plaintiff's reports to treating providers that she was stable for years until October

13  2016 (AR 27, 438); and the state agency medical consultants' opinions that

14  plaintiff was capable of a reduced range of light work (AR 27, 93-95, 104-06).

15  See also Thomas, 278 F.3d at 957 (non-examining physicians' opinions may

16  "serve as substantial evidence when the opinions are consistent with independent

17  clinical findings or other evidence in the record").

18      Because plaintiff has failed to demonstrate a reasonable probability that Dr.

19  Harford's opinion would change the outcome of the decision, remand is not

20  warranted on this ground.

21  ///

22  ///

23  ///

24  ///

25  ///

26

27

28      [14]Plaintiff sought treatment on that date for blood in her stool, and Dr. Harford noted plaintiff was also "drinking a bottle of wine daily at least."  (AR 325-26).

23

**V.      CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  March 29, 2022

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

24